UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 3:10-00099 |
| | ) | JUDGE HAYNES |
| TRAVIS R. HOGG, | ) | |
| Defendant. | ) | |

# MEMORANDUM

On April 28, 2010, the United States of America filed a criminal action against the Defendant, Travis R. Hogg, charging that on or about September 2, 2009, he possessed with intent to distribute 50 grams or more of crack cocaine under 21 U.S.C. § 841(a)(1) (Count One) and possessed with intent to distribute a quantity of cocaine under 21 U.S.C. § 841(a)(1) (Count Two). (Docket Entry No. 1). On March 21, 2011, the Court held a plea hearing, and by agreement of the parties under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, Defendant pled guilty to the lesser included offense of possession with intent to distribute 5 grams or more of cocaine base under 21 U.S.C. § 841(a)(1). After careful consideration, the Court approved Defendant's plea of guilty and the plea agreement. (Docket Entry No. 21).[1]

Defendant filed a motion to withdraw plea of guilty (Docket Entry No. 23), contending that he should be allowed to withdraw his guilty plea because newly discovered evidence undermines the credibility of Detective John Edwards, a key witness. On June 10, 2011, this Court conducted a

---

[1] The plea was originally heard and accepted by the Honorable Todd J. Campbell.

hearing on Defendant's motion, and the Court took the matter under advisement. On July 12, 2011, the Court denied Defendant's motion. See (Docket Entry Nos. 40 and 41).

Before the Court is Defendant's second motion to withdraw plea of guilty (Docket Entry No. 47), contending, in sum, that at Defendant's plea hearing the Court misinformed him as to the statutory penalty range for the offense to which he pled guilty. Defendant also renews his request to withdraw his guilty plea in light of the post-plea revelation as to criminal charges being filed against Detective Edwards. In the alternative, Defendant argues that the Court should determine that Defendant's plea was not knowing, voluntary and intelligent, and allow him to withdraw his plea under the Due Process Clause. In response (Docket Entry No. 50), the Government contends that the Court properly advised Defendant as to the applicable statutory penalty range and that in any event Defendant agreed in his plea agreement and at his plea hearing that he possessed over 28 grams of crack cocaine, placing him in the same penalty range of 5 to 40 years imprisonment under the Fair Sentencing Act ("FSA").[2]

Defendant's plea petition provided that if the FSA applied to Count One the statutory penalty range would be 5 to 40 years of imprisonment, but if the FSA did not apply the statutory penalty range would be 10 years to life of imprisonment.[3] (Docket Entry No. 21 at 1). In the Rule

---

[2]The Fair Sentencing Act of 2010, Pub.L. No. 111–220, 124 Stat. 2372 (2010), was enacted on August 3, 2010.

[3]As of September 2, 2009, the statutory penalty range for crack cocaine offenses was as follows: 0 to 20 years for 0 to 5 grams; 5 to 40 years for 5 to 50 grams; and 10 years to life for 50 grams or more. 21 U.S.C. § 841(b)(1)(A)(iii), (B)(iii), (C) (2009). Under the FSA, the statutory penalty range for crack cocaine offenses was amended, as follows: 0 to 20 years for 0 to 28 grams; 5 to 40 years for 28 to 280 grams; and 10 years to life for 280 grams or more. 21 U.S.C. § 841(b)(1)(A)(iii), (B)(iii), (C) (2011).

2

11(c)(1)(C)[4] plea agreement, the parties agreed that Defendant would plead to the lesser included offense in Count One to possession with intent to distribute 5 grams or more of cocaine base under 21 U.S.C. § 841(a)(1) and the United States would dismiss Count Two upon sentencing. Id. at 7. The parties agreed that the statutory penalty range was 5 to 40 years. Id. As to the factual basis for the plea agreement, Defendant agreed, in part, that he was responsible for at least 50 grams but less than 150 grams of cocaine base that constituted relevant conduct under U.S.S.G. §1B1.3. Id. at 11. The parties agreed that Defendant had three prior felony drug convictions that qualified as either a crime of violence or a controlled substance offense and anticipated that Defendant would be a Career Offender under Section 4B1.1 of the U.S.S.G. and be a Criminal History Category VI under Section 4B1.1(b), resulting in a recommended advisory sentencing range of 188 months to 235 months imprisonment. Id. at 13-14. The parties also agreed to recommend a sentence of 188 months imprisonment that would be the bottom of the applicable Guidelines range for Defendant if he were found to be a Career Offender. Id.[5]

---

[4]Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure provides, in relevant part:

> If the defendant pleads guilty . . . to either a charged offense or a lesser or related offense, the plea agreement may specify that an attorney for the government will:
>
> (C) agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement).

[5]The Government asserts that had Defendant pleaded guilty to the charge of possession of 50 grams or more of crack cocaine, as charged in Count One, the bottom of his applicable Guidelines range as a Career Offender would have been 262 months and that by entering the plea, Defendant avoided the Government's seeking to indict him on additional charges, including one under 18 U.S.C. 924(c).

At the plea hearing, the Court discussed with the parties as to whether the Fair Sentencing Act should apply in calculating Defendant's statutory penalty range.

> THE COURT: My question that I'd like the parties to address and we'll discuss is the statutory penalty, specifically what mandatory minimum term of imprisonment applies. For some context, this being an agreement under Rule 11(c)(1)(C), there is an agreed sentence of 188 months. So that's well above any mandatory minimum, but I have a duty to inform Mr. Hogg not only of the statutory maximum sentence but any mandatory minimum. As I understand it from the first page of the petition, there seems to be a question about whether there is a five-year mandatory minimum or a ten-year mandatory minimum depending on whether the Fair Sentencing Act that was passed in 2010 applies or not. And in looking at the indictment, some of the alleged conduct was in 2009.
>
> And also one other point to consider is the indictment charges 50 grams or more of cocaine base, that is, crack cocaine. But Mr. Hogg is offering to plead guilty to the lesser-included offense of five grams. . . . Under previous law, five grams would trigger a five-year mandatory minimum, and it would take 50 grams to trigger the ten-year mandatory minimum. And under current law, five to 28 grams triggers the five-year mandatory minimum, I believe.
>
> Why I am raising all of this is I have to inform Mr. Hogg of the statutory maximum penalty as well as the statutory sentence, so I wanted to understand what the position of the parties is as to what the mandatory minimum sentence is. Mr. Hannafan, do you have a position?
>
> . . . .
>
> MR. HANNAFAN: United States' position is that the penalty of mandatory minimum of five and maximum penalty of 40 years applies. Defendant is pleading to the lesser-included offense of five grams of crack or more and that the act was not retroactive. Mr. Hogg was charged prior to the passing of that act, and he is now just agreeing to plead to the lesser-included . . .
>
> THE COURT: Here is one other point I should have made which is there is an admission of relevant conduct, as I understand it, in the plea agreement of 50 grams. So the relevant conduct would be taken into account in what is the mandatory minimum sentence.
>
> Let me be clear what I am doing here. I am not objecting to this agreement. It is all these questions are designed to make sure Mr. Hogg understands what he is getting into and what the mandatory minimum sentence is. I understand he's only pleading

guilty to the lesser-included offense, but on the other hand he is admitting for purposes of relevant conduct the 50 grams, if I recall correctly.

MR. HANNAFAN: That's correct.

THE COURT: So if he is admitting the relevant conduct, the mandatory minimum sentence would be set by the relevant conduct, wouldn't it?

MR. HANNAFAN: I don't think it would, Your Honor. I think the mandatory minimum is set by the charge to which he is pleading guilty. . . . So even though the relevant conduct is higher than the amount for the mandatory minimum of ten years to life, we are agreeing to let him plead to the lesser-included. The relevant conduct wouldn't control as to the mandatory minimum. It would control as to his offense level, his base offense level, but I think in this case due to the fact that he is a career offender, his base offense level would still even be higher than if it was just 50 grams of crack.

THE COURT: Well, the agreed sentence again is well above either of these mandatory minimum sentences that are possible. But I am not necessarily sure that in admitting the relevant conduct of at least 50 grams that that wouldn't trigger ten-year mandatory minimum, especially when the statutory maximum would be 40 years even under a five grams of crack cocaine as a lesser-included offense. . . .

. . . .

THE COURT: . . . . And I guess the real question at this point is, you know, is the act retroactive. And without regard to that, putting that aside, whether the relevant conduct admission would trigger a higher mandatory minimum notwithstanding a lesser-included offense.

MR. HOLLEY: Yes, Your Honor. I have to say I agree with Mr. Hannafan that I think the fact that he's pleading to the lesser-included offense of over five grams that that drives the statutory mandatory minimum.

. . . .

THE COURT: He is pleading to five grams or more, but he is admitting 50 or more.

MR. HOLLEY: Yes, Your Honor.

THE COURT: And sentencing certainly under the guidelines is based on actual conduct, relevant conduct, not simply charged conduct.

5

MR. HOLLEY: Yes, Your Honor. You know, I would have to research it. I thought that relevant conduct would go into the guideline calculation -- I mean the 2D1.1 calculation, sure, but that in terms of the statutory mandatory minimum I thought if he pled to five or more.

THE COURT: I am not entirely clear on it. That's why I am raising the issue. The additional wrinkle is it is not as if the mandatory minimum sentence would otherwise exceed the statutory maximum for the lesser-included offense.

MR. HOLLEY: Uh-huh. I guess we were all willing to agree that his mandatory minimum would be at least five years based on his plea is what we were.

THE COURT: I recognize that. But for purposes of accepting a plea of guilty, I have to inform Mr. Hogg of what the mandatory minimum sentence will be or at least the risk of what it will be and not simply the lowest possible one but the highest possible one.

MR. HOLLEY: It may be -- I mean the Fair Sentencing Act decision will remain ambiguous, I think, today.

THE COURT: Will remain what?

MR. HOLLEY: Will probably remain ambiguous today unless the Court wants to decide whether that applies necessarily in a proceeding like this. As will the relevant conduct question. I mean, we could research that and try and resolve that.

THE COURT: Well, my view is the intent of Congress was for the Fair Sentencing Act to be applied to all sentences that were imposed after the act was passed, recognizing that it is, as I understand it, not on its face retroactive, but the basic concept of sentencing is you apply the law that's in effect at the time of sentencing unless it is going to result in a sentence that effectively is an ex post facto law. We've got the reverse situation here in that the new act lowers the sentence rather than raising it. And would seem to me since there is silence, at a minimum, the rule of lenity would counsel towards applying Fair Sentencing Act that results in a lesser sentence rather than a greater sentence. That's what my instinct is. But of course the parties haven't fully addressed that in terms of briefing. And so I don't want to take that position right now once and for all, but that is certainly my instinct that was the intent of Congress.

To a great extent, a lot of this is moot because the agreed sentence exceeds all of this, but I want to make sure I properly do my duty and inform Mr. Hogg what maximum sentence is and also the risk of what the highest mandatory sentence would be.

> Sometimes after people plead guilty and are sentenced, they contest the integrity of the process, and I am trying to guard against that.
>
> It would appear to me that the safest course of action given all these unresolved issues would be to simply inform Mr. Hogg that he may be facing a ten-year mandatory minimum sentence.
>
> MR. HOLLEY: I think that makes sense, Your Honor.
>
> THE COURT: And again since the agreed 188 months sentence well exceeds that, is not having a practical effect on what sentence he will get, but it is important to the procedure that needs to be followed.
>
> . . . .
>
> MR. HANNAFAN: I think out of abundance of caution, it does make sense to advise Mr. Hogg he could be facing the ten-year to life penalties. It is not going to be our position that those do apply based upon the agreement and if the Fair Sentencing Act were to be applied with the new amounts the 28 grams and the 280 grams of crack, then his admitted conduct of 55 grams of crack would still place him in the five-to-40 range.
>
> THE COURT: Right. If the new act applies, even the relevant conduct that is being admitted places him in the five-year mandatory minimum range, correct?
>
> MR. HANNAFAN: Correct.
>
> THE COURT: If the new act does not apply, the relevant conduct has the risk of placing him in a ten-year mandatory minimum sentencing range, but that depends on whether relevant conduct would apply to drive the mandatory minimum or if it is only the lesser-included offense conduct, and we get into all of those issues that somebody will write a Law Review article about, but that doesn't necessarily need to be resolved today, I don't think, for purposes of this plea hearing, but I think the risk to Mr. Hogg needs to be explained to him.

(Docket Entry No. 33 at 4-12).

Following this colloquy, Defendant's counsel spoke to Defendant about what was discussed concerning his sentence, and Defendant elected to go forward with his plea. Id. at 12-13. The Court advised Defendant that the statutory penalty range was either 10 years to life imprisonment or, as

7

agreed by the parties, 5 to 40 years of life imprisonment, but that the agreed upon sentence of 188 months exceeded either mandatory minimum sentence applied. Id. at 15-17. Defendant stated that he understood and that he wanted to plead guilty. Id. at 17, 20.

As to the factual basis for the plea agreement, Defendant agreed to the following:

8. Defendant will plead guilty because he is in fact guilty of the charge contained in the indictment. In pleading guilty, defendant admits the following facts and agrees that those facts establish his guilt beyond a reasonable doubt:

a. On or about September 2, 2009, in the Middle District of Tennessee, the defendant did unlawfully, knowingly, and intentionally possess with intent to distribute 50 grams or more of a mixture and substance containing a detectable amount of cocaine base, that is, crack cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

b. On September 2, 2009, Deputy Steve Gatlin of the Wilson County Sheriff's Department (hereinafter "WCSD") went to 2404a Phillips Road, Lebanon, Tennessee, in the Middle District of Tennessee, to execute an arrest warrant on an unrelated charge on the defendant. In June and July 2009, the defendant had filed vandalism to vehicle reports with the WCSD and listed his address as 2404a Phillips when he filed those reports.

c. After knocking on the front door, Deputy Gatlin went to the back door and encountered the defendant as he was coming out the back door. Deputy Gatlin smelled a strong odor of marijuana coming from the back door and on the defendant's person. The defendant was arrested on the outstanding warrant. Shortly thereafter, a WCSO detective arrived and read the defendant his Miranda rights. The defendant stated that he had just smoked a marijuana joint before Deputy Gatlin knocked on his door and that he ate his remaining marijuana before leaving the residence.

d. Shortly thereafter, two witnesses who had stayed in the defendant's residence advised the detective that they had recently seen the defendant possess, distribute, grow, and use controlled substances in his residence. Based upon the information gathered in the investigation, the WCSO detective applied for a state search warrant. The state search warrant was issued at 7:20 p.m. on September 2, 2009.

e. When officers executed the search warrant, they found mail in the residence addressed to the defendant. They also found digital scales, a 9mm and a .45 caliber

handguns, a 12 gauge shotgun, and a variety of controlled substances. A fingerprint matching that of the defendant's fingerprints was found on the shotgun.

f. The controlled substances seized during the search were tested by the Tennessee Bureau of Investigation's laboratory. Based upon the testing by the laboratory, the substances found inside the residence were as follows: approximately 167 grams of powder cocaine, 55.2 grams of cocaine base, liquid morphine (in an amount undetermined by lab), and 2.2 grams of marijuana.

g. Defendant also acknowledges that for the purpose of determining the applicable advisory sentencing range under the United States Sentencing Guidelines (hereinafter "U.S.S.G."), the following conduct, to which he stipulates, constitutes relevant conduct under U.S.S.G. §1B1.3: the total amount of cocaine base for which he is responsible is between at least 50 grams but less than 150 grams.

(Docket Entry No. 21, at 9-11).

On July 15, 2011, the Attorney General issued a "Memorandum for all Federal Prosecutors"directing United States Attorneys to argue that the FSA's new mandatory minimum sentencing provisions apply to all sentencings that occur on or after August 3, 2010, regardless of when the offense conduct took place. (Docket Entry No. 41-1, at 2). The Memorandum also directs prosecutors to argue that the FSA does not apply to sentences imposed prior to August 3, 2010, whether or not they are final. Id.

Defendant asserts that because the FSA applies to Defendant's sentence and the statutory penalty range is determined by Defendant's plea to the lesser-included offense involving over 5 grams, and not by the presumed "relevant conduct" involving 55 grams of crack, his statutory penalty range is 0 to 20 years. Defendant asserts that if his statutory maximum penalty was just 20 years (instead of 40 years or life), then his Guidelines range as a career offender, see USSG § 4B1.1, would be 151-188 months. Defendant argues that had he been advised of the statutory penalty range he would not have agreed to a binding plea agreement for a sentence of 188 months that was at the top

of the Guidelines range of 151-188 months and a little over four years short of the statutory maximum of 240 months. Defendant contends that the Court erred by failing to advise him that his statutory penalty range was 0 to 20 years in violation of Rule 11(b)(1)(H) and (I) of the Federal Rules of Criminal Procedure.

The Government contends that at the time of Defendant's plea, the Court applied the applicable law in advising Defendant that his penalty range for the crime to which he pleaded guilty was 5 to 40 years.[6] The Government also asserts that the Department of Justice's ("DOJ") change in position as to the FSA's retroactivity only applies to those defendants who were found guilty of possessing 5 or more grams of crack cocaine, but, unlike Defendant, actually possessed less than 28 grams of crack. Moreover, the Government contends that because Defendant admitted and agreed in his plea agreement and at his plea hearing that he possessed over 28 grams of crack, his statutory penalty range would still be 5 to 40 years with the same applicable Guidelines Range relied upon by the parties in reaching the agreed upon sentence of 188 months.

Rule 11(b)(1)(H), (I) of the Federal Rules of Criminal Procedure provides, in relevant part:

> Before the court accepts a plea of guilty . . . the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands, the following:
>
> (H) any maximum possible penalty, including imprisonment, fine, and term of supervised release;

---

[6]The Government asserts that prior to the plea hearing, counsel for the parties discussed the possibility of the Government filing, and Defendant pleading to, an Information charging him with the offense of possession with intent to distribute 28 or more grams of crack. Yet, because the lesser-included offense of 5 grams or more to which Defendant agreed to plead carried the same 5 to 40 years penalty range, the parties' counsel agreed the filing of the Information was unnecessary. (Docket Entry No. 50 at 6).

10

(I) any mandatory minimum penalty[.]

Fed. R. Crim. P. 11(b)(1)(H), (I).

A defendant may withdraw a plea of guilty "after the court accepts the plea, but before it imposes sentence if--the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). "A technical failure to comply with Rule 11 does not . . . require vacation of a plea and opportunity for a new plea." United States v. Syal, 963 F.2d 900, 904 (6th Cir. 1992). A variance from Rule 11's requirements "is harmless error if it does not affect substantial rights." Fed. R. Crim. P. 11(h). Thus, "[i]f a District Court fails to comply with Rule 11 and that failure cannot be said to be harmless, a defendant is entitled to a remedy." Syal, 963 F.2d at 904. Understating or overstating a penalty may be grounds for invalidating a guilty plea. Pitts v. United States, 763 F.2d 197, 201 (6th Cir. 1985) ("When considering a plea agreement, a defendant might well weigh the terms of the agreement against the maximum sentence he could receive if he went to trial. When the maximum possible exposure is overstated, the defendant might well be influenced to accept a plea agreement he would otherwise reject."); United States v. Mitchell, 398 Fed.Appx. 159, 162 (6th Cir. 2010) ("It is true that where . . . a district court overstates the maximum potential sentence to which a defendant may be subject, the misinformation may deprive the defendant of an understanding of the actual consequences he faces and the true nature of the options available to him, thereby making his plea unintelligent.").

As a general rule, a court must "apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." Bradley v. Sch. Bd. of City of Richmond, 416 U.S. 696, 711 (1974). At the time of the plea hearing, the Sixth Circuit held that the FSA's penalty provisions do not apply to

11

defendants whose criminal conduct occurred prior to the FSA's enactment. In United States v. Carradine, 621 F.3d 575 (6th Cir. 2010), the Sixth Circuit stated:

> The "general savings statute," 1 U.S.C. § 109, requires us to apply the penalties in place at the time the crime was committed, unless the new enactment expressly provides for its own retroactive application.
>
> The new law at issue here, the Fair Sentencing Act of 2010, contains no express statement that it is retroactive nor can we infer any such express intent from its plain language. Consequently, we must apply the penalty provision in place at the time Carradine committed the crime in question. We affirm the district court's imposition of the 60-month mandatory minimum sentence.

Id. at 580 (citations omitted); United States v. Greer, 415 Fed.Appx. 673, 677 (6th Cir. 2011) (citing Carradine, the Court held that the FSA did not retroactively apply to actions on appeal).

The Sixth Circuit has yet to address the FSA's applicability to situations where a defendant committed the criminal offense before the FSA's enactment, but is sentenced afterwards. Several district courts in this Circuit have construed Carradine as proscribing the FSA's applicability in such situations. See United States v. Campbell, 767 F. Supp.2d 873, 875 (E.D. Tenn. 2011) ("[N]othing in its Carradine opinion indicates that its holding is limited to defendants who had already been sentenced at the time the FSA's changes went into effect. In fact, the plain language of the opinion . . . indicates precisely the opposite. The Sixth Circuit not only considered the FSA's effect on the applicable mandatory minimums, but explicitly held that the relevant date was the date of the crime, not the date of sentencing.") (citation omitted); United States v. Reddick, No. 10-cr-20064, 2011 WL 768306, at *9 (E.D. Mich. Feb. 28, 2011) ("The language of Carradine does not permit a distinction to be drawn among defendants based on the date of sentencing. . . . Thus, unless and until the Sixth Circuit modifies its holding in Carradine, this Court is obligated to sentence all defendants whose conduct preceded the enactment of the FSA in accordance with the law as it existed on the date of

the offense."); United States v. Young, No. 10–20148, 2011 WL 1042264, at *8 (E.D. Mich. March 18, 2011) ("The FSA is not applicable to cases in which the offense occurred prior to August 3, 2010."); United States v. Easley, No. 10-20642, 2011 WL 1743905, at *1-2, 5 (E.D. Mich. May 6, 2011) (same) ("At last count, 25 district courts have held that a defendant who committed his drug crime before the effective date of the FSA is subject to the old penalties, even if his indictment or conviction (and thus his sentence) comes after the FSA became law. . . . Forty-one district courts have held the opposite[.]"); but see United States v. Gilliam, 753 F. Supp.2d 683, 687 (W.D. Mich. 2010) (Carradine did not apply to yet sentenced defendants); United States v. Robinson, 763 F. Supp.2d 949, 956 (E.D. Tenn. 2011); United States v. Shull, No. 2:07-CR-223, 2011 WL 2559426, at *7 (S.D. Ohio June 29, 2011).

The Second, Seventh, and Eight Circuits have concluded that the FSA does not apply retroactively to defendants sentenced after the FSA's enactment. See United States v. Acoff, 634 F.3d 200, 201-02 (2d Cir. 2011); United States v. Fisher, 635 F.3d 336, 340 (7th Cir. 2011), rehearing and rehearing en banc denied, 646 F.3d 429 (7th Cir. 2011) ; and United States v. Sidney, No. 11-1216, _F.3d_, 2011 WL 3477200, at *1 (8th Cir. Aug. 10, 2011). The First, Third and Eleventh Circuits have concluded that the FSA does apply retroactively to defendants sentenced after the FSA's enactment. See United States v. Douglas, 644 F.3d 39 (1st Cir.2011); United States v. Dixon, No. 10–4300, _F.3d_, 2011 WL 3449494, at *1 (3d Aug. 9, 2011); United States v. Vera Rojas, 645 F.3d 1234, 1236 (11th Cir. 2011).

As the FSA's retroactivity to defendants sentenced after its enactment remains unclear in this Circuit and based upon other case authority in support of its non-retroactivity, the Court concludes that the Court properly advised Defendant, pursuant to the parties' agreement, as to the applicable

law at the time of the plea hearing. Further, the Court properly advised Defendant that the penalty range for the offense to which he pleaded guilty was 5 to 40 years that was consistent with the Department of Justice's ("DOJ") position at the time of the plea hearing. The DOJ's change in position relates to how prosecutors should apply the new threshold amounts of crack under the FSA to defendants who were convicted of possessing more than 5 grams of crack, but who actually possessed less than 28 grams who are sentenced after August 3, 2010, and does not retroactively create a violation of Rule 11(b)(1)(H) and (I) by the Court.

Moreover, even if the DOJ's new position as to the FSA is applied to Defendant, his statutory penalty range would remain unchanged. Under the FSA, the statutory penalty range for possession with intent to distribute 28 to 280 grams of crack cocaine is 5 to 40 years. 21 U.S.C. § 841(b)(1)(B)(iii) (2011). As to the factual basis for his plea agreement, Defendant admitted to the following: (1) that he "unlawfully, knowingly, and intentionally possess[ed] with intent to distribute 50 grams . . . of cocaine base, that is, crack cocaine"; (2) that officers found "approximately 167 grams of powder cocaine, 55.2 grams of cocaine base" in his residence; and (3) that "for the purpose of determining the applicable advisory sentencing range under the United States Sentencing Guidelines . . . the following conduct, to which he stipulates, constitutes relevant conduct under U.S.S.G. §1B1.3: the total amount of cocaine base for which he is responsible is between at least 50 grams but less than 150 grams." (Docket Entry No. 21, at 9-11).

At the plea hearing, the Court stated, "He is pleading to five grams or more, but he is admitting 50 or more," to which defense counsel responded "Yes." (Docket Entry No. 33 at 8). The Government subsequently stated that "if the Fair Sentencing Act were to be applied with the new amounts the 28 grams and the 280 grams of crack, then [Defendant's] admitted conduct of 55 grams

of crack would still place him in the five-to-40 range." The Court answered, "Right. If the new act applies, even the relevant conduct that is being admitted places him in the five-year mandatory minimum range[.]" Id. at 11. Defendant made no objection to this position. Therefore, because Defendant admitted to 55.2 grams of crack, the 5 to 40 years penalty range to which the parties agreed in their plea agreement and that Judge Campbell advised at the plea hearing is the same penalty range that would apply if the FSA were applied to Defendant under the DOJ's new position. Thus, Defendant cannot show any error by the Court or that he suffered any prejudice by any alleged Rule 11 violation.

Defendant cites United States v. Gonzalez, 420 F.3d 111 (2d Cir. 2005), contending that the Court violated Rule 11(b)(1)(H) and (I) for allegedly failing to advise the defendant of the correct maximum and minimum penalties. As discussed below, the Court concludes that Defendant's reliance on Gonzalez is misplaced.

In Gonzalez, the defendant was indicted for conspiring to distribute and possess with intent to distribute fifty grams or more of crack. Id. at 114. At his plea hearing, Gonzalez pleaded guilty, but did not admit to the 50 grams of crack alleged in the indictment. Id. at 116-17. Gonzalez later moved to withdraw his guilty plea, but the district court denied the motion. Id. at 118-19. Based upon Apprendi v. New Jersey, 530 U.S. 466 (2000) that was decided in the interim between his plea and sentence, Gonzalez appealed the denial of his motion to withdraw because he did not admit the statutory drug quantity and he was misinformed as to his right to have a jury rather than the court determine that quantity. Id. at 115.

Because the defendant did not admit at his plea hearing to the amount of crack charged in the indictment, the Second Circuit held that under Apprendi, the defendant's applicable penalty range

based upon his plea was 0 to 20 years under § 841(b)(1)(C). Id. at 131. The Second Circuit concluded that because Gonzalez did not admit that he was involved with 50 or more grams of crack, his conviction would be vacated and he would be allowed to withdraw his plea. Id. at 133-34. The Court concluded that "[b]ecause the defendant . . . was misinformed as to his right to have the charged statutory drug quantity proved to a jury and because he did not admit quantity at his plea allocution, his guilty plea to an aggravated § 841(b)(1)(A) offense was not knowing, voluntary, or sufficient to support the judgment of conviction." Id. at 134. Thus, the Court concluded that the district court violated Rule 11(b)(1)(C), not Rule 11(b)(1)(H) or (I), because the district court failed to advise the defendant of his right to have a jury trial on the charge to which he pleaded guilty under Apprendi.

Here, this action does not involve any Apprendi issues. Defendant pleaded guilty to a specific amount of crack -5 or more grams- and was properly advised as to the correct minimum and maximum penalties he was facing for his offense. Unlike the defendant in Gonzalez, Defendant here admitted to possessing 55.2 grams of crack at his plea hearing. Defendant's admission as to that amount provided the factual basis for the Court to accept Defendant's plea to the lesser-included offense. That admission also makes the change in the DOJ's position regarding the FSA inconsequential.

Accordingly, the Court concludes that Defendant's decision to enter his plea of guilty to the lesser-included offense pursuant to the parties' Rule 11(c)(1)(C) agreement was made knowingly and voluntarily and Defendant is unable to show a fair and just reason for the Court to allow Defendant to withdraw his plea.

As to Defendant's renewed request to withdraw his guilty plea in light of the post-plea revelation as to criminal charges being filed against Detective Edwards, Defendant reasserts the same arguments previously addressed by the Court. See Court's Memorandum (Docket Entry No. 40). For the reasons previously stated by the Court, this contention is without merit.

For these reasons, the Court concludes that Defendant's second motion to withdraw plea of guilty (Docket Entry No. 47) should be denied.

An appropriate Order is filed herewith.

**ENTERED** this the ___ day of September, 2011.

WILLIAM J. HAYNES, JR.
United States District Judge